Matter of the Proposed Incorporation of the VILLAGE OF ORISKANY.

(County Court, Oneida County, November, 1914.)

Taxes — Village Law, § 3 — when no error is committed in excluding assessed valuation upon " special franchises."

Section 3 of the Village Law, relating to the incorporation of villages, provides: " The said consent shall be signed by owners of real property situated within such territory constituting one-third in value thereof, as assessed upon the last preceding town assessment roll." Held, that while apparently the words " real property" as used in the Tax Law mean both land and its appurtenances, and also " special franchises," a supervisor of a town, in rendering a decision in favor of a proposition to incorporate a village, commits no error in excluding the assessed valuation upon the " special franchises " within the territory of the proposed village.

APPEAL by a taxpayer of the proposed village from the decision of the supervisor of the town of Whitestown, made pursuant to section 6 of the Village Law in favor of said proposed incorporation.

Kernan & Kernan, for appellant.

A. S. Malsan, for respondent.

HAZARD, J. The error assigned on this appeal is that the proposition for incorporation did not comply with section 3 of the Village Law, or that portion

thereof which provides as follows: "The said consent shall be signed by owners of real property situated within such territory constituting one-third in value thereof, as assessed upon the last preceding town assessment roll." It seems that within the territory of the proposed village there are a large number of "special franchises," and that the assessed valuation thereof was not included in the computation made by the supervisor. There is no dispute but that an amount in excess of one-third of the appraised valuation of the real estate, using the term in its ordinary sense, was obtained; neither is there any dispute but that if the assessed valuation of the special franchises in that district was included, the consent was not signed by one-third of the total. The question is thus presented as to whether the supervisor erred in excluding special franchises. He has decided in favor of the proposition, which we assume involves a decision that the owners of one-third of the assessed valuation of the real estate signed the consent in this case, but obviously he excluded the assessed valuations upon the special franchises, and it is claimed that in so doing he committed an error, and that a jurisdictional fact is lacking in this proceeding.

As an ordinary proposition the question seems a simple one, as the statute above quoted reads, "real property," and, in the ordinary acceptation of that term, real property would not include what is known as "special franchises;" but it is claimed that the language of the statute "as assessed upon the last preceding town assessment roll" necessarily refers us to the Tax Law for a definition of what is meant by "real property." Having recourse to that law we find that section 2, paragraph 3, defines land, real estate and real property as used in that chapter to mean not only the land itself, but what may be epito-

mized into " special franchises," so that, apparently, as used in the Tax Law, the words " real property " mean both land and its appurtenances, and also " special franchises."

It will be observed that the statute which we are considering (Village Law, § 3) does not say real estate, as *defined* in the Tax Law, but real estate as *assessed* upon the last preceding town assessment roll. Having recourse to the assessment roll for the town of Whitestown for the year in question we find that as a matter of fact there are three " parts," that is, that the property of that town is divided into three groups, classes or parts, viz.: *Firstly,* real property, using the term in its ordinarily accepted sense. *Secondly,* personal property, and *thirdly,* " special franchises." As above stated, the supervisor has decided that one-third of the assessed valuation of " part one " was all that was required. Was that decision an error, and must he also have included " part three? " The question is not without some difficulty, and I am unable to find any decision bearing upon the subject, and my attention is not called to any. It is argued with some force that as a matter of justice there is no reason why the legislature should have excluded what in this instance amounts to many thousands of dollars of valuation from participation in this question. We, however, must start out with the patent fact that the legislature did not intend to give a voice in this matter to owners of all kinds of property, as obviously and beyond dispute it excludes the owners of assessed personal property, which, of course, would be taxable for the village expenses if the territory becomes a village. The question of whether it was the legislative intent to exclude also the owners of special franchises from a participation in the preliminary steps of incorporation still remains. The question is one of legisla-

tive intent.   The proposition is certainly debatable, and has been debated with earnestness and ability on both sides.

It is a cardinal legal principle that in the interpretation of statutes words in common use are to be construed in their natural, plain and ordinary signification.   36 Cyc. 1114; *City of New York* v. *Manhattan R. Co.*, 192 N. Y. 194; *Benton* v. *Wickwire*, 54 id. 226–228; *Matter of Fox*, 52 id. 530–535; *People ex rel. McNeile* v. *Glynn*, 128 App. Div. 257–260.

While the question is not without its difficulties, it seems to me that the undoubted meaning of the legislature when it used the language " owners of real property " was to employ that term in its ordinary and usual signification.   There can be no dispute about the proposition that ordinarily when the phrase " real property " is used that what is meant is *land,* and not merely a right to use public streets and places for the purposes of public utility corporations.   A somewhat cogent illustration of this, which I cannot refrain from alluding to, is to be found in the opinion written by Commissioner MALTBIE in *Matter of Mid-Crosstown R. Co., Inc.*, 2 Dept. Rep. 29, where, speaking of the Mid-Crosstown Company, the commissioner says: " The company has no car barn, power house or real estate of any sort."   The fact is that the company referred to by the commissioner has as appears by the report " special franchises " of the value of $150,000 or thereabouts, but the commissioner says " it has no real estate."   There is also the other fact pointed out above that the statute in question does not say that the consent shall be signed by the owners of one-third of the real property in such territory as *defined* by the Tax Law, but what it does say is that it shall be signed by the owners of one-third of the real estate, " as assessed."   In view also of the further fact that

the legislature obviously intended to exclude personal property from consideration, I do not find any serious difficulty in reaching the conclusion that it was also intended to exclude the owners of what certainly would be regarded as personal property but for an unusual definition contained in the Tax Law.

After mature deliberation it is my opinion that what the legislature intended was to provide for the consent of one-third of the freeholders within the district, as a preliminary to submitting the proposition to a vote. It therefore follows, in my opinion, that the decision of the supervisor was correct, and that it should be sustained.

Decision sustained.